Case 1:20-cv-00165 Document 41 Filed on 11/08/21 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
November 08, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JULIO CESAR MEDRANO, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 1:20-165 |
| § | | |
| KILOLO KIJAKAZI, § | | |
| ACTING COMMISSIONER OF § | | |
| SOCIAL SECURITY, § | | |
| Defendant. § | | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Julio Cesar Medrano ("Medrano"). Dkt. No. 1.[1]

Having reviewed the record and the pleadings, the Court recommends that the petition be denied. This recommendation follows from the fact that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence.

## I. Background

### A. Procedural History

On October 19, 2017, Medrano applied to receive Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 27-8, p. 303.[2] Medrano claimed that his disability effective date was September 18, 2014. Id.

On February 6, 2018, Medrano's claim was initially denied. Dkt. No. 27-5, p. 136. On October 11, 2018, after reconsideration, Medrano's claim was again denied. Id., p. 183.

---

[1] The petition itself was filed and signed by Medrano, but his mother filed many subsequent documents. Dkt. Nos. 6, 24, 31, 32, 34. On October 22, 2021, the Court struck the documents filed by Medrano's mother and ordered that Medrano file any pleadings on his own behalf. Dkt. No. 35. On November 4, 2021, Medrano re-filed his briefs in his own name and the Court has considered his briefing in reaching its decision.

[2] The citation to the record refers to the Bates-stamped number on each record page.

1

On August 2, 2019, a hearing was held before an ALJ. Dkt. No. 27-4, p. 68. On September 6, 2019, the ALJ decided that Medrano was not entitled to benefits. Dkt. No. 27-3, p. 17. On August 6, 2020, the Appeals Council denied Medrano's timely request for review. Id, p. 9. Medrano has sought timely review of the Commissioner's decision in this Court.

### B. Factual Context

Medrano was born in August 1994 and was 23 years old at the time of his claimed disability onset date. Dkt. No. 27-8, p. 303.

The ALJ found that Medrano suffered from "major depressive disorder, intermittent explosive disorder, and alcohol use disorder." Dkt. No. 27-3, p. 23. These findings, generally, are undisputed. The ALJ found that when Medrano was abusing alcohol, he was legally disabled, but that if he stopped abusing alcohol, he would be able to work. Medrano disputes the finding that he would retain the residual functional capacity ("RFC") for work if he stopped abusing alcohol.[3]

### C. Medical History

During his treatment and the disability process, Medrano was examined by multiple doctors. A summary of their observations and findings follows.

On October 6, 2017, Medrano was admitted to the Rio Grande State Center, in Harlingen, Texas, for in-patient mental treatment. Dkt. No. 27-11, p. 461. He was admitted because he complained of insomnia, suicidal ideations, auditory hallucinations, depression, anxiety, and paranoia. Id., p. 467. It was noted that Medrano drank alcohol daily and "that is how he self-medicates." Id. He was diagnosed with severe depressive disorder "with psychotic features" as well as alcohol use disorder. Id.

---

[3] Medrano is proceeding pro se in this court. Dkt. No. 1. In analyzing Medrano's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). Medrano's complaint and her briefs all focus upon his psychological limitations and his inability to work. Dkt. Nos. 1, 32. In construing his complaint liberally, it appears that he is alleging that the ALJ erred in determining her RFC to work. As such, the discussion of the facts of this case will be limited to the facts which bear upon Medrano's mental health and capacity to work if he stopped abusing alcohol.

2

It was also noted that Medrano had a "history of refusing medication," but was prescribed Prozac and Seroquel to address his depression, anxiety, psychosis, and alcohol abuse. Dkt. No. 27-11, p. 468. After staying on the medication during his in-patient treatment, Medrano denied any further suicidal ideations, hallucinations, or paranoia. Id. When he was admitted to the hospital, he said his anxiety was a 10 on a 1-to-10 scale and his depression was an eight out of 10. Id., p. 469. After taking his medication, he reported that the anxiety was a two and the depression was a one or two. Id. The doctor's notes indicated that, with the medication, Medrano had no limitations in his daily living and "is able to function in the community." Id.

On October 18, 2017, Medrano was evaluated on an out-patient basis at Tropical Texas Behavioral Health. Dkt. No. 27-11, pp. 509-510. He reported that he had been drinking 18 beers per day. Id. Medrano reported that he was highly irritable and avoided people, so he did not hurt anyone in anger. Id. Medrano reported that he had stopped using the Prozac and Seroquel that he was prescribed but agreed to resume use. Id., p. 515. The dosage of the Seroquel was increased. Id. Medrano was diagnosed with major depressive disorder, intermittent explosive disorder, and severe alcohol use disorder. Id., p. 517.

On November 13, 2017, Medrano had a follow up visit at Tropical Texas Behavioral Health. Dkt. No. 27-11, p. 523. Medrano reported that he was "feeling good," but believed that the increased Seroquel dosage was causing headaches. Id., p. 525. Medrano denied any suicidal ideations. Id. The Seroquel dosage was decreased to help address the headaches. Id.

On March 8, 2018, Medrano had another follow-up visit at Tropical Texas Behavioral Health. Dkt. No. 27-12, p. 568. Medrano reported that he was still using alcohol every other day and he sometimes hears a voice calling his name. Id., p. 570.

In another follow up visit on May 3, 2018, Medrano reported that he continued to use alcohol "on and off." Dkt. No. 27-12, p. 584. He attempted group therapy for his alcohol abuse but reported that he did not "tolerate that environment." Id. Rather, Medrano

was "doing exercises and try[ing] to do things by himself to be able to be tapering down slowly his alcohol use." Id.

On June 13, 2018, Medrano had another visit, where he reported drinking "12 to 18 beers a day recently, but now [down] to about half of that." Dkt. No. 27-12, p. 601.

On June 28, 2018, Medrano had another visit, where he reported that his mood had been better and that he was doing well with the current medication doses. Dkt. No. 27-12, p. 610. He reported using alcohol twice a week, but that he drank 12 beers when he did; the doctor's notes do not reveal if that was 12 beers total or 12 beers on each occasion. Id. It was noted that Medrano was calm and wished to continue his current medication prescriptions. Id.

On June 6, 2019, Medrano had a follow up visit at Tropical Texas Behavioral Health. Dkt. No. 27-13, p. 649. Medrano reported that he was feeling better and that he was using the medication as prescribed. Id. Medrano remained calm during the visit and reported no suicidal ideations. Id., p. 650.

On June 19, 2019, Medrano had another visit at Tropical Texas Behavioral Health, where he denied any depression or suicidal ideation. Dkt. No. 27-13, p. 660.

### D. Disability Evaluations

Two state agency consultants – Dr. Leela Reddy and Dr. G.R. Ibarra – reviewed Medrano's medical records regarding his physical and mental abilities as part of the disability process.

#### 1. Dr. Reddy

On January 31, 2018, Dr. Reddy, a state agency medical consultant, reviewed Medrano's medical records in determining a residual functional capacity assessment. Dkt. No. 27-5, p. 113. Dr. Reddy found that Medrano had no physical impairments that would impact his ability to work. Id., p. 112. Dr. Reddy found that Medrano was "markedly limited" in his ability to understand and remember detailed instructions as well as in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable

4

number and length of rest periods." Id, pp. 110-11. Dr. Reddy also found that Medrano was "moderately limited" in his abilities: (1) to maintain attention and concentration for extended periods; (2) work in coordination or in proximity to others without being distracted by them; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Id. Dr. Reddy concluded that Medrano was not disabled. Id. She did not opine on how Medrano's abilities would change if he ceased abusing alcohol.

### 2. Dr. Ibarra

On October 11, 2018, Dr. G.R. Ibarra, a state agency medical consultant, also reviewed Medrano's medical records to assess his residual functional capacity. Dkt. No. 27-5, p. 150. Dr. Ibarra found that Medrano was "moderately limited" in his "ability to understand and remember detailed instructions," but that he would be able to engage in simple, routine, repetitive tasks if he abstained from alcohol. Id., p. 149. Dr. Ibarra also found that if Medrano abstained from alcohol, he would be able to maintain socially appropriate behavior, but "would do best in a setting with reduced peer/public contact." Id., p. 150. Dr. Ibarra found that Medrano was "moderately limited" in his ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or in proximity to others without being distracted by them; (4) interact appropriately with the general public; and (5) accept instructions and respond appropriately to criticism from supervisors. Id., pp. 149-50. Dr. Ibarra concluded that Medrano was not disabled.

Before turning to and examining the specifics of the ALJ's decision in Medrano's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any

5

substantial gainful activity by reason of any <u>medically determinable</u> physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Id</u>. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the evaluation process stops, and the claimant is determined to not be disabled. <u>Harrell v. Bowen</u>, 862 F.2d 471 (5th Cir. 1988).

### 1. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

### 2. Step Two

The second step of the process requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted earlier, this showing applies to both physical and mental impairments.

### 3. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### 4. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

#### a. Residual Functional Capacity.

Residual functional capacity ("RFC") "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).[4]

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 C.F.R. § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported

---

4 "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

7

by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second step only if the claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### 5. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272.  Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1).  If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

## III. The ALJ's Decision

In step one, the ALJ found that Medrano had not engaged in substantial gainful activity since September 18, 2014. Dkt. No. 27-3, p. 22.  That finding is not challenged.

In step two, the ALJ found that Medrano suffered from major depressive disorder, intermittent explosive disorder, and alcohol use disorder. Dkt. No. 27-3, p. 23.  This finding is also unchallenged.

Because the ALJ found that substance abuse was a part of Medrano's disabilities, she was required to assess whether the substance abuse was "a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535.  As such, the ALJ analyzed Medrano's disability with the substance factored in and then analyzed whether Medrano would still be disabled if he stopped abusing alcohol. Id.

9

### A. With Alcohol Abuse Considered

The ALJ — in her step three analysis — found that Medrano did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 27-3, pp. 23-24.  In determining whether Medrano had a listed mental impairment, the ALJ found that Medrano had moderate limitations with "understanding, remembering or applying information" as well as in "interacting with others." Id.  The ALJ found that Medrano had marked limitations in "concentrating, persisting or maintaining pace." Id.  These findings — as well as the overall finding that he did not have a listed impairment — are unchallenged.

In step four, the ALJ found that Medrano had the RFC to perform work at all exertional levels, but had the "following nonexertional limitations: he can understand, remember, and carryout simple instructions (1-2-3 step tasks), and make simple decisions. He is limited to no interaction with the public, and only occasional interaction with coworkers. He requires 1-3 additional breaks, each lasting 10-20 minutes at a time, during the workday. He requires reminders of job duties past the normal learning and training period for jobs." Dkt. No. 27-3, p. 25.

In arriving at this finding, the ALJ found that Medrano's testimony as well as his mother's third-party function reports were "not consistent with or supported by the medical evidence of record." Dkt. No. 27-3, p. 25.

The ALJ found that Medrano abused alcohol as "means to self-medicate" which "contributed to his exacerbation of symptoms to the extent that he required inpatient psychiatric treatment." Dkt. No. 27-3, p. 25.  The ALJ found that Dr. Reddy's opinion was not persuasive as she did not address "the impact of the claimant's substance abuse in relation to his symptoms when making her determination." Id., p. 26.  The ALJ did, however, find Dr. Ibarra's opinion "somewhat persuasive" in holding that, in the absence of substance abuse, Medrano could work full-time with some limitations. Id, pp. 26-27.

The ALJ found that Medrano had no past relevant work. Dkt. No. 27-3, pp. 26-27.

The ALJ found that with the substance abuse disorder, Medrano would be unable to perform any work. Dkt. No. 27-3, p. 27.

### B. Without Substance Abuse Considered.

The ALJ was also required to consider what Medrano could do if he stopped the substance abuse.

At Step Two, the ALJ concluded that Medrano would continue to suffer from major depressive disorder and intermittent explosive disorder even if he stopped abusing alcohol. Dkt. No. 27-3, p. 28.

At Step Three, the ALJ found that Medrano did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 27-3, pp. 28-29.  In determining whether Medrano had a listed mental impairment, the ALJ found that Medrano would have moderate limitations with "understanding, remembering or applying information" as well as in "interacting with others" and "concentrating, persisting or maintaining pace." Id.  The ALJ also found that Medrano would have mild limitations in "adapting or managing" himself if he stopped abusing alcohol. Id.

At Step Four, the ALJ found that if Medrano stopped abusing alcohol, he would have the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions (1-2-3 step tasks), and make simple decisions. He is limited to no interaction with the public, and only occasional interaction with coworkers." Dkt. No. 27-3, p. 29.  The ALJ found that the medical records at Rio Grande showed that when Medrano stopped abusing alcohol and took medications, he "no longer experienced hallucinations, paranoia, or suicidal ideations." Id., p. 30.  Dr. DeLeon – one of the doctors at Texas Tropical –noted that when Medrano stopped abusing alcohol and took medications, his "thought content, insight, judgment, attention, memory, and concentration were good." Id.  The ALJ reiterated that she found Dr. Ibarra's opinion to be "somewhat persuasive" in finding that

Medrano could work if he stopped abusing alcohol. Id, p. 32.

The ALJ again found that Medrano had no prior work that he could return to. Dkt. No. 27-3, p. 32. However, based upon the testimony of the vocational expert, in step five, the ALJ found that there were sufficient jobs in the national economy, such as night cleaner, furniture stripper and eyeglasses assembler, that Medrano could still perform. Dkt. No. 27-3, p. 33.

Based upon Medrano's RFC and his ability to perform certain work if he stopped abusing alcohol, the ALJ concluded that Medrano was not disabled. Dkt. No. 27-3, p. 33.

## IV. Applicable Law

### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v.

Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

**V. Analysis**

The Court must construe Medrano's pro se complaint liberally, to ensure that his claims are given fair and meaningful consideration. Haines, 404 U.S. at 520. The crux of Medrano's claim is that he is completely disabled and unable to work, even if he stops abusing alcohol. Dkt. No. 32. Despite this claim, the ALJ found that Medrano was able to perform jobs within his RFC. There does not appear to be any dispute regarding the ALJ's findings at the first three steps; Medrano is challenging the ALJ's finding at step four, that he can still perform work if he stops abusing alcohol. Accordingly, the Court will focus on whether the ALJ's findings regarding Medrano's RFC are supported by sufficient evidence.

The review of Medrano's claim has one overarching limitation: it is not this Court's role to determine if Medrano is disabled. Instead, the Court is to determine whether the ALJ's decision is supported by substantial evidence. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) ("The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."). With this in mind, the Court turns to the question of whether the ALJ's decision is supported by substantial evidence.

In determining Medrano's RFC, the ALJ relied on the opinion of Dr. Ibarra. Dkt. No. 27-3, pp. 27-33. Dr. Ibarra opined that Medrano was capable of engaging in simple,

13

routine, repetitive tasks if he abstained from alcohol, but noted that Medrano would do best in a setting "with reduced peer/public contact." Dkt. No. 27-5, pp. 162-64.

The Court notes that of all of the medical opinions, Dr. Ibarra's evaluation was the only one that discussed what Medrano's limitations would be if he stopped using alcohol. The ALJ found the opinion "somewhat persuasive" and clearly incorporated it into Medrano's RFC. For example, she found that even if Medrano stopped abusing alcohol, he would require a job that had "no interaction with the public and only occasional interaction with coworkers." Dkt. No. 27-3, p. 29.

Dr. Ibarra's opinion constitutes substantial evidence supporting the finding that Medrano can perform some work if he stops abusing alcohol. "A RFC assessment prepared by a state agency medical consultant, provided it is a function-by-function assessment . . . constitutes substantial evidence, at least where it is not wholly conclusory." Brown v. Astrue, 2009 WL 64117, *4 (N.D. Tex. 2009) (unpubl.) (collecting cases). Accordingly, between Dr. Ibarra's opinion and the medical records, there is substantial evidence in the record to support the conclusion that Medrano can perform some work if he stops abusing alcohol.

Medrano has cited additional medical records to support his claim that he is disabled, even after he has stopped using alcohol. Dkt. No. 32. The Court does not consider new evidence that was not before the ALJ at the time that she rendered her decision. Burditt v. Massanari, No. A-00-CA-314 AA, 2001 WL 685522, at *8 (W.D. Tex. May 15, 2001). Furthermore, even if the Court were to consider the medical records, Medrano is asking the Court to re-weigh the evidence, which it cannot do. Carey, 230 F.3d at 135.

Additionally, Medrano asserts that he suffers from other ailments (irritable bowel syndrome, sleep apnea, carpal tunnel) that the ALJ did not consider, Dkt. No. 39. He also claims that his mental illness started earlier than the ALJ stated. Id. The Court has reviewed the transcript of the hearing as well as the exhibits and these issues were not raised before the ALJ. "[T]he ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence. The ALJ's duty to investigate, though, does not extend

14

to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995). Because Medrano did not clearly put those issues before the ALJ, the ALJ had no obligation to consider them, making the decision supported by substantial evidence.[5]

## VI. Recommendation

It is recommended that the petition for review of the denial of Disability Insurance Benefits and Supplemental Security Income filed by Julio Cesar Medrano be denied.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made.  The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings.  If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on November 8, 2021

_____
Ronald G. Morgan
United States Magistrate Judge

---

[5] Medrano is free to file a new application for benefits and submit his proffered medical evidence as part of that application.